IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| CHAUNTA' NORTON-JOHNSON, | x | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION<br>FILE NO. 3:14-cv-00077-TCB-RGV |
| WEST GEORGIA CARDIOLOGY<br>ASSOCIATES, P.C. and<br>DR. CHARLIE ROUSE, | : | |
| Defendants. | : | |
| _____ | x | |

## PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

**Waiver of Exemption**

1.

Plaintiff t was told that she had to make up her time when she was absent for sickness or health reasons (Pl. Dep. 206:17 – 207:5) or even for absences of less than a day. (Norton-Johnson Decl., ¶1). Marion Smith advised Plaintiff of this policy in 2010 when Plaintiff was promoted to Billing Manager. (*Id*.). Rosalind Smith, the Office Coordinator, repeated this policy to Plaintiff in 2013 when Plaintiff was given the title of Business Office Manager. (*Id*.).

2.

When Plaintiff prepared the payroll, she became aware of and thus had personal knowledge that other so-called "managers" also had their pay docked,

1

including Angelica Grier, who was the Front Office Manager. (*Id*., ¶2).

3.

Defendants deducted pay from Ms. Norton's Johnson's check for an absence of less than a full day, in December 2013. (Pl. Ex. 1; Norton-Johnson Decl., ¶¶3,5).

4.

All of the other times that Ms. Norton-Johnson had been absent for doctor's appointments during her pregnancy, she had made the time up so as to avoid any deduction from her pay. (Norton-Johnson Decl., ¶4). She was unable to make up the time in the first week of December 2013 because she was required to leave on an emergency basis to give birth. (*Id*.)

5.

Plaintiff's paycheck for the pay period ending December 14, 2014 reflected that she was docked – on an hourly basis – for the time of less than a full day – 8.92 hours – for the absences caused by her pregnancy disability. (Pl. Ex. 1).

6.

Ms. Norton-Johnson's "terminal week of employment" was not during the pay period ending December 14, 2013. Ms. Norton-Johnson received two additional paychecks, for the pay periods ending December 28, 2014 and January 11, 2014. (Pl. Ex. 1).

7.

Defendants' Separation Notice to the Georgia Department of Labor, states that Ms. Norton-Johnson's "Period of Last Employment" was "From 7/12/2010 To 1/8/2014. (Pl. Ex. 2).

8.

Ms. Norton-Smith was not on an FMLA leave. (Norton-Johnson Decl., ¶6).

9.

Defendants became aware of the pay docking issue at Ms. Norton-Johnson's deposition on June 16, 2015 (Pl. Dep. 207-08).

10.

The pay docking issue was raised again in July 2015 when Plaintiff's counsel specifically raised the issue in a letter dated July 2, 2015 (Pl. Ex. 5).

11.

Defendants never reimbursed Plaintiff for the pay that had been docked. (Norton-Johnson Decl., ¶7).

**Plaintiff Compensated on an Hourly Basis**

12.

The job description ("Job Standard") for Ms. Norton-Johnson's title of Business Office Manager required that Ms. Norton-Johnson work at least 80 hours every two weeks ("HOURS: 80 hours bi-weekly") (Pl. Ex. 3).

13.

The document reflecting Plaintiff's June 2013 pay adjustment specifically indicates that she was being paid on an hourly basis. (Pl. Ex. 4).

**<u>Plaintiff did not exercise discretion or independent judgment in the performance of her job duties</u>**

14.

Plaintiff did not have a "team" and was not a supervisor, irrespective of the job title that had been given to her. She was, at most, a lead, which is not recognized as a supervisor under the FLSA. (Pl. Dep. 24:15-19, 37:21-25, 38:11-20, 43:17 – 44:3, 44:20 – 45:8, 69:3 – 70:25,74:10-22, 77:18-78:16, 88:13-16, 90;25-91:5, 92:11-93:6, 93:13-21, 94:5-17, 95:16-96:2, 98:5-99:2, 137:2-18, 140:8-9, 143:9-144:1, 151:21-25, 178;13-24, 179:19-187:21, 189:11-24, 192:11-193:19).

15.

Plaintiff did not "run the billing department. (Pl. Dep. 24:15-19, 37:21-25, 38:11-20, 43:17 – 44:3, 44:20 – 45:8, 69:3 – 70:25,74:10-22, 77:18-78:16, 88:13-16, 90;25-91:5, 92:11-93:6, 93:13-21, 94:5-17, 95:16-96:2, 98:5-99:2, 137:2-18, 140:8-9, 143:9-144:1, 151:21-25, 178;13-24, 179:19-187:21, 189:11-24, 192:11-193:19).

16.

Plaintiff did not serve as a "liaison". (Norton-Johnson Decl., ¶8).

17.

Plaintiff did not exercise discretion or independent judgment regarding "implementation" of management policies with respect to her personnel and HR-related duties. Plaintiff just did what she had been told to do and had no authority to deviate from the policies that had she had been told to implement. (*Id*., ¶9).

18.

Plaintiff did not exercise discretion or independent judgment regarding disseminating information to other employees. (Norton-Johnson Decl., ¶10).

19.

Plaintiff did not exercise discretion or independent judgment regarding contacting patients who did not pay and "negotiating" payment plans. She was given a standing order to agree to accept "whatever the patient can pay" and that "nobody was to be turned away" (Pl. Dep., 119-20, Norton-Johnson Decl., ¶11).

20.

Preparing the payroll was clerical work. (Norton-Johnson Decl., ¶12, Pl. Dep., 125).

21.

Preparing the 401(k) calculations was clerical work. (Pl. Dep., 126-27, Norton-Johnson Decl., ¶13).

22.

The indigent program was done according to a chart, and was clerical work. (Pl. Dep., 129, Norton-Johnson Decl., ¶14).

23.

Plaintiff's job duties with respect to credentialing was merely to "fill out the paperwork – for them to join the insurance company." (Pl. Dep. 124).

24.

Plaintiff did not exercise discretion or independent judgment regarding the billing department. (Norton-Johnson Decl., ¶16). Plaintiff merely posted the charges to the patient's account as reflected in the "superbill" given to her by the doctors. She would "follow up" with the insurance company by merely asking why a claim had not been paid, and would then seek to provide any necessary supplementation to the claim so that the insurance company would reverse its position and pay the claim. (Pl. Dep. 117).

25.

Plaintiff did not exercise discretion or independent judgment regarding submitting bills. (Norton-Johnson Decl., ¶18).

26.

Plaintiff did not exercise discretion or independent judgment regarding using billing codes. It was clerical work. (*Id.*, ¶19).

27.

Plaintiff did not exercise discretion or independent judgment regarding submitting bills to insurance companies. It was clerical/ministerial work. (*Id.*, ¶20).

28.

Plaintiff did not exercise discretion or independent judgment regarding making corrections to insurance claims. It was clerical/ministerial work. (*Id.*, ¶21).

29.

Plaintiff did not exercise discretion or independent judgment regarding filing and handling appeals. Plaintiff had no discretion regarding whether or not to file an appeal. (Pl. Dep.124, (*Id.*, ¶22). Plaintiff's job duties with respect to appeals and denials were of a clerical/ministerial nature only. If a claim had been denied by the insurance company, Plaintiff's instructions were to automatically file an appeal and to write any required justification for payment of the claim.  That was the full extent of Plaintiff's involvement in appeals. (*Id.*).

30.

Plaintiff did not exercise discretion or independent judgment regarding denials of insurance claims. It was clerical/ministerial work. (*Id.*, ¶23).

31.

Plaintiff did not exercise discretion or independent judgment regarding third-party collections.   Plaintiff's duties regarding third-party collections were just to inform Rosalind Smith that a patient did not pay his/her account. Ms Smith or Dr. Rouse would make the decision whether to send it to collection. If the decision was made to send the account for collection Plaintiff would just forward it.  Plaintiff's job duties regarding collections did not go beyond merely forwarding the account to the collection agency for collection. (*Id.*, ¶24, Pl. Dep., pp. 130, 133).

32.

Plaintiff did not exercise discretion or independent judgment regarding Phreesia. (Pl. Dep., 172-74). Plaintiff asked questions about the product, asked for a reference, and gave it to Daryl Billingsley. (Pl. Dep. 172 – 74, Norton-Johnson Decl., ¶25).

33.

Plaintiff did not exercise discretion or independent judgment regarding Cypress Health.  Plaintiff's job duties with respect to Cypress Health Group consisted solely of "[giving] the contract to the Practice Administrator to look over" and relaying his concerns. (Pl. Dep., Ex. 11, p. 320).  Plaintiff did not negotiate the terms of any contract with Cypress Health Group. (*Id.*; Norton-Johnson Decl., ¶26).

34.

Plaintiff did not exercise discretion or independent judgment regarding the meeting with WellCare. Plaintiff attended the meeting with WellCare only to provide information. (Pl. Dep. 176).

35.

Plaintiff did not exercise discretion or independent judgment regarding suggesting potential solutions to billing issues. (Norton-Johnson Decl., ¶27).

36.

Plaintiff did not exercise discretion or independent judgment regarding providing revenue reports and provided service analysis reports. "Providing" these reports consisted solely of printing them off a computer data base and bringing them into a meeting (Pl. Dep. 103:2- 104:2, 106:20-25).

37.

Plaintiff did not have the authority to and did not hire anybody. (Pl. Dep. 60 – 61, Norton-Johnson Decl., ¶28).

38.

Plaintiff did not have authority to and did not fire anybody. (Norton-Johnson Decl., ¶29).

39.

Plaintiff did not exercise discretion or independent judgment during her attendance at financial meetings. Plaintiff just answered questions from management and WGC's accountant. (*Id.*, ¶30).

**Willful Violation of the FLSA**

40.

Defendants did not make any inquiry into whether their conduct was in compliance with the FLSA. (Smith Decl., ¶¶19-22, Rouse Decl., ¶2).

41.

Defendants' "showing" of "good faith" to preclude liquidated damages is merely that Rosalind Smith merely "believe[d] Plaintiff was properly classified" (Smith Decl., ¶21) and Dr. Rouse "depend[ed] on others to make . . . decisions" regarding the classification of Plaintiff. (Rouse Decl., ¶2).

42.

Disputed. Rosalind Smith could not have had objectively reasonable grounds for believing that Plaintiff was properly classified as exempt under the administrative exemption. . (Pl. Exs. 3,4). In addition, Ms. Smith told Plaintiff that her pay would be docked if she did not make up the time that Plaintiff was absent to go to doctor's appointments, even if the absence was for less than a full day. (Pl.

Decl., ¶1, Pl. Dep. 207 – 08).  In fact, when Plaintiff was unable to make up the time that she had been out to go to doctor's appointments, her pay was in fact docked, for an absence caused by sickness of less than a full day.  (Pl. Ex. 1).

**Liability of Dr. Rouse**

43.

Dr. Rouse took an active role in the operation of his practice and was present on a daily basis. (Norton-Johnson Decl., ¶32).

44.

Dr. Rouse made the ultimate decisions regarding pay, promotions, hiring, and sending accounts out for collection. (*Id.*, ¶33).

45.

Dr. Rouse was at the pinnacle of the organizational hierarchy at WCG. (Pl. Dep. 42 – 43, 159-60, Pl. Dep., Ex. 9, p. 6).

46.

Either Rosalind Smith or Dr. Rouse would make the determination regarding pay increases for employees. (Pl. Dep. 75, 77).

47.

Plaintiff attended meetings on a regular basis with Dr. Rouse, Daryl Billingsley, Rosalind Smith, Angelica Grier and Candace Brown, where various operational issues of the practice would be discussed. (Pl. Dep. 87, 101 – 03, 105).

48.

At these meetings, Dr. Rouse would ask about the billing. (Pl. Dep. 103).

49.

Dr. Rouse also attended regularly-held financial meetings, with Plaintiff, Ms. Smith and Mr. Billingsley. (Pl. Dep. 111).

50.

There were also regularly-held management meetings that were attended by Dr. Rouse, Ms. Smith and Mr. Billingsley. (Pl. Dep. 98 – 99).

51.

If a patient owed money, Plaintiff would take the account to Ms. Smith who would give it to Dr. Rouse to see if there was some settlement option. (Pl. Dep. 118).

52.

Dr. Rouse gave the instruction that if a patient wanted to pay their account in full, they could give the patient a ten percent discount. (Pl. Dep. 118).

53.

Dr. Rouse gave the instruction that the employees in the Billing Department should accept whatever the patients would agree to pay on their accounts. (Pl. Dep. 119).

54.

Dr. Rouse hired the Practice Administrator. (Pl. Dep. 164).

55.

Dr. Rouse signed for receipt of Plaintiff's memo suggesting that an employee be moved to full-time status and that another employee be hired in the Billing Department. (Pl.Dep., 188-90, Ex. 17). The memo had been requested by Dr. Rouse. (Pl. Dep. 189).

Respectfully submitted
September 28, 2015

      s/Robert N. Marx
Georgia Bar Number 475280
Jean Simonoff Marx
Georgia Bar No. 475276
Marx & Marx, L.L.C.
Attorneys for Plaintiff
5555 Glenridge Connector, Suite 200
Atlanta, Georgia 30342
Telephone: (404) 261-9559
E-mail: lawyers@marxlawgroup.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| CHAUNTA' NORTON-JOHNSON, | x | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION<br>FILE NO. 3:14-cv-00077-TCB-RGV |
| WEST GEORGIA CARDIOLOGY ASSOCIATES, P.C. and DR. CHARLIE ROUSE, | : | |
| Defendants. | : | |
| _____ | x | |

**CERTIFICATE OF SERVICE**

This is to certify that on September 28, 2015, I electronically filed: **Plaintiff's Statement of Disputed Material Facts,** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> C. Todd Van Dyke, Esq.
> Jackson Lewis P.C.
> 1155 Peachtree Street, NE, Suite 1000
> Atlanta, GA 30309
> vandyket@jacksonlewis.com

Respectfully submitted, this 28th day of September 2015.

> s/Robert N. Marx
> Georgia Bar Number 475280
> Marx & Marx, L.L.C.
> Attorneys for Plaintiff
> 5555 Glenridge Connector, Suite 200
> Atlanta, Georgia 30342
> Telephone: (404) 261-9559
> E-mail: lawyers@marxlawgroup.com